UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

OHIO SECURITY INSURANCE COMPANY,

Plaintiff,

v. Case No: 2:25-cv-581-SPC-NPM

HARBOR FREIGHT TOOLS USA, INC.,[1]

Defendant.

---

HARBOR FREIGHT TOOLS USA, INC.,

Third-Party Plaintiff,

v.

CANDU INVESTMENT, LLC,

Third-Party Defendant,

---

## OPINION AND ORDER

Before the Court are Plaintiff Ohio Security Insurance Company's Motion for Summary Judgment (Doc. 47) and Defendant Harbor Freight Tools USA, Inc.'s Combined Brief in Support of its Cross-Motion for Summary

[1] Defendant Everest Indemnity Insurance Company (Everest) was dismissed with prejudice. (Doc. 51).

Judgment and in Opposition to OSIC's Motion for Summary Judgment (Doc. 54). Ohio Security Insurance Company ("Ohio Security") filed a Combined Reply and Opposition to Cross-Motion (Doc. 55) and Harbor Freight Tools USA, Inc. ("Harbor Freight") filed a Reply in Support of its Cross-Motion for Summary Judgment (Doc. 56). The Honorable John E. Steele heard oral arguments on June 24, 2026.[2] For the reasons below, the Court grants Ohio Security's motion and denies Harbor Freight's.

**Background**

Ohio Security filed a Complaint (Doc. 23) seeking declarations that Harbor Freight is obligated to reimburse or otherwise contribute to the settlement of an injury claim filed by Stacy Pappas ("Pappas") against Candu Investments, LLC ("Candu") ("the Pappas Claim"), which settled for $1 million.[3] Harbor Freight filed a Counterclaim (Doc. 9) seeking judicial declarations contrary to those sought by Ohio Security. Harbor Freight also filed a Third-Party Complaint (Doc. 59) against Candu. A Motion to Dismiss (Doc. 68) by Candu remains pending.

The Court finds the following material facts undisputed: at all relevant times, Harbor Freight leased premises from Kiki L. Courtelis as Trustee under

[2] Judge Steele passed away before ruling on the motions, and the case was reassigned to the undersigned on July 27, 2026. In ruling on the motions, the Court has reviewed all documents of record and the June 24, 2026, hearing transcript.

[3] Everest Insurance, Harbor Freight's insurer, was dismissed from the current case with prejudice pursuant to a settlement with Ohio Security. (Docs. 50, 51).

an Investment Trust, also known as Candu Investment, LLC ("Candu" or "Landlord"), pursuant to a written Lease. (Doc. 54-4).[4] The relevant portions of the heavily redacted Lease provide:

- The "Premises" were located at 13860 North Cleveland Avenue, in North Fort Myers, Florida. (*Id.* §1.1).
- The "Premises" contained 14,900 rentable square feet consisting of a portion of a Building within the Northshore Shopping Center. (*Id.*)
- Harbor Freight was responsible for certain non-structural maintenance and repairs of the Premises/Building and for the improvements it installed. (*Id.* §20.1). This responsibility did not extend to any portion of the Premises or Building at issue in the Pappas Claim.
- Candu was responsible, at no expense to Harbor Freight, for the repair, maintenance, and replacement of the Building's structural elements, including exterior walls, roofs, and roof coverings throughout the Common Areas. (*Id.* § 20.2). The portions of the Building involved in the Pappas Claim were the responsibility of Candu, not Harbor Freight.

[4] The Declaration of Attorney Kyle D. Smith states that the Lease is a true and correct copy of the Lease between Harbor Freight and Candu. (Doc. 54-2). This is undisputed.

- Candu was also responsible to "operate, repair, maintain and replace all aspects of the Common Areas so as to keep the Common Areas in good condition and repair." (*Id.* § 11.1). The "Common Areas" of the Premises consist of all parking areas, parking lot facilities, landscaped areas, "streets, sidewalks, driveways, monument and/or pylon signs, utility lines serving the foregoing, common loading platforms, ramps, and other facilities available for use by Tenant" and others. (*Id.* § 11.1). The portions of the Common Areas involved in the Pappas Claim were Candu's responsibility, not Harbor Freight's.
- Harbor Freight and its customers were granted a nonexclusive right and easement to use all the Common Areas free of charge. (*Id.*) Pappas was injured while walking in a Common Area of the Building.
- With one exception not applicable in this case, neither Harbor Freight nor Candu was "obligated to perform any maintenance, repair or replacement, the necessity of which shall have arisen solely due to the negligence or fault of the other, or of the other's employees, agents or contractors; and in such case, the party which shall have caused the need for such maintenance, repair or

replacement shall be responsible for same, at its sole cost." (*Id.* §20.4).

- If there was damage to the Premises, Building, or Shopping Center, Candu was obligated to repair the damage and restore the Premises to its prior condition at Candu's sole expense. (*Id.* § 27.1).
- Both Harbor Freight and Candu were required to obtain liability insurance. (*Id.* §26).
- Harbor Freight was required to "obtain and keep in force" a commercial general liability policy providing bodily injury and property damage insurance that insured Harbor Freight and Candu "against any liability arising out of the use, occupancy or maintenance of the Premises by Tenant [Harbor Freight]." (*Id.* §26.1). The Policy limit had to be at least $1 million per occurrence and $2 million in the aggregate. (*Id.*) Harbor Freight was to be the "named insured" while Candu was to be named as an "additional insured." (*Id.*)
- Candu was required to "obtain and keep in force" a commercial general liability policy providing bodily injury and property damage insurance insuring Candu "against any liability arising out of the ownership, use, occupancy or maintenance of the Shopping Center, including the Common Areas." (*Id.* §26.2). The

Policy limits were to be no less than $1 million/$2 million per occurrence and $2 million/$5 million in the aggregate. (*Id.*).

- Both Harbor Freight and Candu waived subrogation, "release[ing] each other from liability for damage to the property of the other to the extent of the greater of insurance maintained or required to be maintained hereunder." (*Id.* §26.6).
- Harbor Freight agreed to indemnify Candu for conduct for which Harbor Freight was responsible and to provide a defense for Candu against such actions. (*Id.* §31.1).
- Candu agreed to indemnify Harbor Freight for conduct for which Candu was responsible or that occurred in the Common Area (unless caused by Harbor Freight). (*Id.* §31.2).

Both parties agree that Candu fulfilled the Lease's insurance requirement by obtaining the Ohio Security Policy. Ohio Security (through its parent company Liberty Mutual Insurance) issued a Commercial General Liability policy to Candu. The Policy insured the "Shopping Strip Center" for the period from April 24, 2023, to April 24, 2024, with an "each occurrence limit" of $1 million and an aggregate of $2 million for the location at issue in the Pappas Claim. (Doc. 47-2 at 20, 24). The Ohio Security Policy also contained an "Other Insurance" provision stating that the Ohio Security Policy

was either primary or excess insurance, depending on certain circumstances. (*Id.* at 39–40, as amended at 57–58).

Both parties agree that Harbor Freight also met the Lease's insurance requirement by obtaining the Everest Policy. (Doc. 47 at 3, ¶ 4). The Everest Policy (Doc. 47-1) provided in relevant part:

- Everest "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which the insurance applies." (*Id.* at 169).
- Although the Policy did not specifically identify the North Fort Myers location as one of the eighty-eight covered locations, Exhibit B identifies that store as a covered location. (*Id.* at 296). No party disputes that the Policy applies to that location.
- Coverage of $1 million per occurrence and $2 million aggregate was provided for the location at issue in the Pappas Claim. (Doc. 54-5 at 26).
- Coverage under the Policy was amended by an endorsement to include "additional insured[s]." An "additional insured" is defined as "any person or organization that entered into a written contract with the named insured requiring such person(s) or organization(s) to be included as an additional insured with respect to liability arising out of the premises[.]" (Doc. 47-1 at 252).

Although Candu was not specifically identified as an additional insured, it was an "additional insured" under the endorsement to the Policy as the lessor of the leased Premises.

- Coverage was provided to an additional insured "but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you [Harbor Freight] and shown in the Schedule subject to the following additional exclusions[.]" (*Id.*).
- The relevant exclusions are:
  - The additional insured coverage "only applies to the extent permitted by law" (*id.*); and
  - For coverage provided to an additional insured required by contract or agreement, "the insurance afforded to the additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured." (*Id.*).
- A Self-Insured Retention ("SIR") Endorsement (*id.* at 186–90) provided that Harbor Freight "will pay all damages, settlements and 'allocated loss adjustment expense' arising out of each 'occurrence' until [Harbor Freight has] paid a total of Self-Insured Retention amounts and 'allocated loss adjustment expense' that

exceeds the [$1,000,000 SIR amount]." (*Id.* at 187). Additionally, under the SIR Harbor Freight was "responsible for the investigation, defense and settlement of any claim or 'suit seeking damages within the Self-Insured Retention," and "for the handling of all claims and 'suits' and the payment of settlements . . . within the Sel[f] Insured until (final closure) exhaustion", and was required to "accept any reasonable offer to settle any claim or 'suit' for an amount within the Self Insured retention." (*Id.* at 189).

- Ohio Security agrees that references to "you" and "your" in the Everest Policy refer to Harbor Freight. (*Id.* at 169; Doc. 47 at 4, ¶ 7).

Harbor Freight used the leased Premises to operate a retail store open to the public. On November 21, 2023, Pappas visited the Harbor Freight store with family members as potential customers. After shopping, Pappas exited the store through the main entrance. After taking fewer than ten steps outside the door, soffit material from the exterior ceiling/overhang above the sidewalk collapsed onto Pappas, causing her severe injuries. Pappas was on the sidewalk outside the Building when she was struck by the material.

Pappas later filed a claim against Candu (but not Harbor Freight) for bodily injury, seeking damages exceeding $1 million (the Pappas Claim). Ohio Security, Candu's insurer, settled the Pappas Claim before litigation, paying

the $1 million Ohio Security Policy limit based on Candu's potential liability. Harbor Freight received notice of the Pappas Claim and the proposed settlement but was not otherwise involved in the settlement process and did not contribute any funds. Ohio Security does not assert that Harbor Freight was responsible for the maintenance of the roof or soffits but affirmatively asserts that Harbor Freight has no direct or vicarious liability for the Pappas Claim.

**Legal Standard**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The principles governing summary judgment do not change when the parties cross-move for summary judgment. *Gerling Glob. Reinsurance Corp. of Am. v. Gallagher*, 267 F.3d 1228, 1233 (11th Cir. 2001). Cross-motions for summary judgment are to be treated separately, "view[ing] the facts 'in the light most favorable to the non-moving party on each motion.'" *Cowen v. Sec'y of Ga.*, 22 F.4th 1227, 1231 (11th Cir. 2022) (quoting *Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012)). "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir.

1984) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975)). Ultimately, "[w]hen parties jointly move for summary judgment, the court has three options: granting summary judgment for the plaintiff under the defendant's best case, granting summary judgment for the defendant under the plaintiff's best case, or denying both motions for summary judgment and proceeding to trial." *FCOA LLC v. Foremost Title & Escrow Servs. LLC*, 57 F.4th 939, 959 (11th Cir. 2023).

**Analysis**

Ohio Security seeks summary judgment declaring that Harbor Freight owes Ohio Security almost $1 million. Specifically, Ohio Security seeks declarations that: (1) Candu is entitled to coverage under Harbor Freight's Everest Policy for the Pappas Claim as an additional insured; (2) the coverage afforded to Candu under Harbor Freight's Everest Policy is primary and the coverage afforded to Candu under the Ohio Security Policy is excess; (3) as an excess carrier, Ohio Security is entitled to reimbursement for its settlement of the Pappas Claim; and (4) because the Everest Policy contains a Self-Insured Retention (SIR) endorsement, reimbursement that would normally be paid by Everest Insurance must be paid by Harbor Freight up to the amount of Harbor Freight's remaining SIR (*i.e.*, $978,402.25). (Doc. 47 at 2–3, 7–14).

In its Counterclaim, Harbor Freight seeks summary judgment declaring that: (1) the Everest Policy does not provide coverage to Candu for the Pappas

Claim; (2) the Ohio Security Policy issued to Candu is a primary policy rather than an excess policy because Harbor Freight and Candu have an indemnity agreement; and (3) Harbor Freight is entitled to its attorney's fees and costs related to this action. (Doc. 54).

In the First Amended Third-Party Complaint (Doc. 59) against Candu, Harbor Freight seeks a declaratory finding that: (1) Ohio Security's subrogation claim against Harbor Freight arises out of negligence for which Candu is responsible; and (2) Candu must indemnify, defend, and hold harmless Harbor Freight for the action by Ohio Security.

Because federal jurisdiction in this case is premised on diversity of citizenship, the Court applies Florida's substantive law. *Westchester Gen. Hosp., Inc. v. Evanston Ins. Co.*, 48 F.4th 1298, 1302 (11th Cir. 2022). Under Florida law, ordinary contract principles govern the interpretation and construction of insurance policies. A court first examines the plain meaning of the policy's language using ordinary rules of construction and, if a provision is clear and unambiguous, it is enforced according to its terms. *Sheriff of Broward Cnty. v. Evanston Ins. Co.*, 159 F.4th 792, 806–07 (11th Cir. 2025).

## A. Whether Candu Is Additional Insured Entitled To Coverage Under Everest Policy

Ohio Security argues that Candu is an additional insured under the Everest Policy and is entitled to coverage for the Pappas Claim. (Doc. 47 at 7–11). Ohio Security further argues that coverage as an additional insured is

separate from whether any negligence by Harbor Freight caused Candu's liability for the Pappas Claim or whether Harbor Freight had an obligation to indemnify Candu for the Pappas Claim. Rather, Ohio Security argues that Candu's entitlement to additional insured coverage "turns only on the question of whether its liability '[arises] out of the . . . use of that part of the premises leased to [Harbor Freight], which it clearly does." (*Id.* at 11).

Harbor Freight disagrees and argues that there can be no additional insured coverage unless Harbor Freight is at least vicariously liable for the Pappas Claim. (Doc. 54 at 7–10). Harbor Freight also argues that coverage as an additional insured is limited to liability "arising out of" its ownership, maintenance, or use of the leased Premises. (*Id.* at 11–14).

Candu is indeed an additional insured under the Everest Policy, but not for the reason argued in its Motion. Whether Candu is entitled to coverage for the Pappas Claim as an additional insured is a separate issue.

**(1) Candu is an "Additional Insured"**

The Everest Policy contains an endorsement defining an "additional insured" as "any person or organization that entered into a written contract with [Harbor Freight] requiring such person(s) or organization(s) to be included as an additional insured with respect to liability arising out of the premises shown on the designation of premises schedule." (Doc. 47-1 at 252).

Candu falls squarely within this provision, even though it is not specifically identified as an additional insured in the Everest Policy.

The Lease required Harbor Freight to "obtain and keep in force" a commercial general liability policy providing bodily injury and property damage insurance that insures Harbor Freight *and* Candu "against any liability arising out of the use, occupancy or maintenance of the Premises by Tenant [Harbor Freight]." (Doc. 54-4 § 26.1). The Lease required the Policy limit to be no less than $1 million per occurrence and $2 million in the aggregate. (*Id.*) Harbor Freight was to be the "named insured" while Candu was to be named as an "additional insured." (*Id.*).[5]

Although Candu was not explicitly named as an additional insured, counsel for both parties agreed at oral argument that Candu qualifies as an "additional insured" under the Everest Policy. Ohio Security is therefore entitled to a declaratory judgment confirming that Candu is an additional insured under the Everest Policy.

[5] Another endorsement to the Everest Policy defines "additional insured" as those "required by written contract executed by both parties prior to loss" for "liability arising out of the ownership, maintenance or use of that part of the *land* leased" to Harbor Freight. (Doc. 47-1 at 264) (emphasis added). This endorsement does not apply because Harbor Freight had no lease of the land itself. In any event, this endorsement would add nothing to the analysis of whether Candu was an additional insured or has coverage under the Everest Policy for the Pappas Claim.

### (2) Candu Has Coverage Under The Everest Policy For Pappas Claim

As in any insurance case, being a named or additional insured is the starting point of the analysis, not the end. The second, independent issue is whether, as an (additional) insured, Candu was afforded coverage under the Everest Policy for the Pappas Claim. While the material facts are undisputed, Ohio Security and Harbor Freight take opposing positions on the coverage issue.

"The scope and extent of insurance coverage is determined by the language of the insurance policy. Thus, the policy's text is paramount and must be the starting point of a court's analysis." *Escobar v. Citizens Prop. Ins. Corp.*, 433 So. 3d 903, 909 (Fla. Dist. Ct. App. 2026) (citations omitted). "[W]hen analyzing an insurance contract, it is necessary to examine the contract in its context and as a whole, and to avoid simply concentrating on certain limited provisions to the exclusion of the totality of others." *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003). "Every provision in a contract should be given meaning and effect and apparent inconsistencies reconciled if possible." *Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So. 2d 938, 941 (Fla. 1979); *see also Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000) ("[C]ourts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect."); *Catalina W. Homeowners Ass'n, Inc. v. First Cmty. Ins. Co.*, 418 So.

3d 689, 694 (Fla. Dist. Ct. App. 2025) (same). "[T]o the extent an endorsement is inconsistent with the body of the policy, the endorsement controls." *Colony Ins. Co. v. Titan Restoration Constr., Inc.*, 398 So. 3d 1023, 1025 (Fla. Dist. Ct. App. 2025) (citations omitted). Coverage and the accompanying duty to indemnify the insured is determined by reference to the actual facts and circumstances of the injury. *Mid-Continent Cas. Co. v. Royal Crane, LLC*, 169 So. 3d 174, 181 (Fla. Dist. Ct. App. 2015) (citations omitted).

The Court begins with the text of the Everest Policy. The Insuring Agreement provision of that Policy provides that Everest "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which the insurance applies." (Doc. 47-1 at 169). The Everest Policy then answers the question "Who Is An Insured," by describing a number of alternatives (*id.* at 177), none of which would include Candu. The Everest Policy then identifies a category of "Additional Insured–Managers or Lessors of Premises" who are covered under the Policy. (*Id.* at 252). Candu is an "additional insured" under this provision. As to coverage, the Everest Policy provides that an "additional insured" is covered:

> only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you [Harbor Freight] and shown in the Schedule and subject to the following additional exclusions: . . . However: 1. The insurance afforded to such additional insured only applies to the extent permitted by law; and 2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that

> which you are required by the contract or agreement to provide for such additional insured.

(*Id.* at 252).

As the Court sees it, there are three relevant components of this coverage provision that merit discussion: (a) whether Candu's liability for the Pappas Claim "aris[es] out of" Harbor Freight's use of the premises it leased from Candu; (b) whether Florida law permits the scope of the additional insured's coverage; and (c) whether the coverage is broader than that required by the Harbor Freight Lease.

**(a) "Arising Out Of" Requirement**

Candu's liability for the Pappas Claim must "arise out of" Harbor Freight's "ownership, maintenance or use" of the leased Premises for the Everest Policy to provide coverage. Unsurprisingly, Ohio Security argues that the Pappas Claim "arises out of" Harbor Freight's "use" of the premises (Doc. 47 at 10–11), while Harbor Freight argues to the contrary. (Doc. 54 at 14–19).

The Florida Supreme Court has discussed the meaning of "arises out of" in the context of an exclusionary provision of an insurance policy. In *Taurus Holdings, Inc. v. U.S. Fidelity & Guaranty Company*, 913 So. 2d 528 (Fla. 2005) an insurance policy excluded coverage for "all bodily injury and property damage occurring away from premises you own or rent and arising out of your product." The Florida Supreme Court concluded that the phrase "arising out of your product" was unambiguous. *Id.* at 539. The Court then concluded that

"[t]he term 'arising out of' is broader in meaning than the term 'caused by' and means 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to' or 'having a connection with.'" *Id.* (quoting *Hagen v. Aetna Cas. & Sur. Co.*, 675 So. 2d 963, 965 (Fla. Dist. Ct. App. 1996)). "This requires more than a mere coincidence between the conduct (or, in this case, the product) and the injury. It requires 'some causal connection, or relationship.' But it does not require proximate cause." *Id.* at 539–40; *see also Garcia v. Fed. Ins. Co.,* 969 So. 2d 288, 293 (Fla. 2007) ("Arising out of" requires only some level of causation greater than coincidence); *Herrington v. Certain Underwriters at Lloyd's London*, 342 So. 3d 767, 770 (Fla. Dist. Ct. App. 2022) ("Arising under" covers losses "incident to" or "having a connection with"); *Martinez v. Citizens Prop. Ins. Corp.*, 982 So. 2d 57, 58–59 (Fla. Dist. Ct. App. 2008) ("Arising out of" is something greater than coincidence). While broad, "arising out of" does not cover every incident somehow related to the insured. *See, e.g.*, *Hilton Hotels Corp. v. Emps. Ins. of Wausau*, 629 So. 2d 1064, 1065 (Fla. Dist. Ct. App.1994); *Union Am. Ins. Co. v. Haitian Refugee Ctr./Sant Refijie Ayisyin, Inc.*, 858 So. 2d 1076, 1077 (Fla. Dist. Ct. App. 2003).

Ohio Security argues that Candu's liability for the Pappas Claim "[arose] out of the . . . use of that part of the premises leased to [Harbor Freight]" and therefore Candu has coverage for the Pappas Claim under the Everest Policy. (Doc. 47 at 7). This portion of its briefing relied solely on two non-binding

district court decisions: *Continental Insurance Company v. Nationwide Insurance Company of America*, 6:20-cv-1439-WWB-DCI, 2021 WL 8894460, *4 (M.D. Fla. Sept. 28, 2021), and *Depositors Insurance Company v. Loan Ranger Acquisitions, LLC*, 457 F. Supp. 3d 1255 (M.D. Fla. 2020). (*Id.* at 7–11). Both sides rely on *Hilton Hotels Corp.* The Court finds that the facts underlying each decision is not sufficiently like this case to be particularly persuasive (or in the case of *Hilton Hotels*, controlling) on the issue now before the Court.

The Court concludes that Ohio Security has shown a sufficient causal connection between the leased Premises and the incident that gave rise to the Pappas Claim. The parties do not dispute that Pappas had been a customer at the Harbor Freight store, had left the store, and was outside the Building on a common area sidewalk of the Shopping Center when a roof/soffit overhanging that sidewalk collapsed on her. Candu's liability "arises out of" Harbor Freight's use of the leased Premises because the injury was clearly "incident to" or "having a connection with" Harbor Freight's use of its leased Premises as a retail store and Pappas' presence in the store as a customer before the injury. Ms. Pappas' presence on the sidewalk where the injury occurred was not a "mere coincidence" under Florida law.

### (b) Florida Law Allows Coverage

Harbor Freight next argues that Florida law does not permit an additional insured to obtain coverage for its own negligence, and that the named insured must at least be vicariously liable for the conduct. Ohio Security undisputedly "does not assert that Harbor Freight either bears any direct or vicarious liability for Pappas' injury or had responsibility for maintenance of the roof or soffits." (Doc. 54 at ¶¶ 2–3; Doc. 55 at ¶¶ 2–3).

Harbor Freight relies primarily upon *Garcia v. Federal Insurance Company*, 508 F.3d 1331, 1332 (11th Cir. 2007) and *Garcia v. Federal Insurance Company*, 969 So. 2d 288, 291 (Fla. 2007), as well as non-binding cases. (Doc. 54 at 11–14). The *Garcia* cases are not controlling, and the language of the insurance policy in those cases is materially different from the Everest Policy. The Florida Supreme Court held that an insurance policy providing coverage to "any other person with respect to liability because of acts or omissions of the named insured" was unambiguous and required that an additional insured's liability be "caused by" the acts or omissions of the named insured. Because this language provided coverage only when there was vicarious liability by the named insured, the Florida Supreme Court held that its prior opinion in *Taurus Holdings* interpreting the broader phrase "arising out of" did not apply. *Garcia*, 969 So. 2d at 291–93. Where the additional insured endorsement contains no such limiting language, the additional

insured is entitled to coverage for its own negligence arising out of the operations of the named insured. *Container Corp. of Am. v. Maryland Cas. Co.*, 707 So. 2d 733, 736 (Fla. 1998); *Koala Miami Realty Holding Co., Inc. v. Valiant Ins. Co.*, 913 So. 2d 25, 27 (Fla. Dist. Ct. App. 2005).

The Everest Policy contains no specific limiting language concerning the named insured's vicarious liability. Therefore, Harbor Freight's argument does not preclude coverage.

**(c) "Not Broader Than" Requirement**

Under the Everest Policy, "[i]f coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you [Harbor Freight] are required by the contract or agreement to provide for such additional insured." (Doc. 47-1 at 252). This language requires the Court to return to the Lease to determine the scope of the insurance coverage Harbor Freight was obligated to obtain for Candu.

The Lease requires Harbor Freight to "obtain and keep in force" a commercial general liability policy providing bodily injury and property damage insurance that insures Harbor Freight and Candu "against any liability arising out of the use, occupancy or maintenance of the Premises by Tenant [Harbor Freight]." (Doc. 47-1 § 26.1). The policy limit was to be at least $1 million per occurrence and $2 million in the aggregate. (*Id.*) The

additional insured provision in the Everest Policy is not broader than the coverage required to be obtained under the Lease. Other provisions of the Lease articulating the responsibilities of the Landlord and the Tenant do not affect the scope of coverage.

Ohio Security is therefore entitled to a declaration that Candu is an additional insured under the Everest Policy and is entitled to coverage for the Pappas Claim because (a) that claim arises out of Harbor Freight's use of its leased Premises, (b) such coverage is allowed by Florida law, and (c) such coverage is not otherwise excluded by the provisions of the Everest Policy.

**B. Which Policy or Policies Provide Primary Coverage?**

Because both policies providing coverage for the Pappas Claim, the Court must determine which is primary. Ohio Security argues that both the Everest Policy and the Ohio Security Policy contain "other insurance" provisions from which the Court must determine the priority of the coverage for the Pappas Claim. Ohio Security asserts that these provisions establish it is entitled to a declaration that the Everest Policy provides the primary coverage, while the Ohio Security Policy provides only excess coverage. Therefore, Ohio Security asserts, it is entitled to monetary contribution of nearly $1 million under the Everest Policy on the settlement of the Pappas Claim. (Doc. 47 at 11–13). Ohio Security's legal memorandum cites no binding Florida authority for its position.

Harbor Freight responds that even if Candu is entitled to coverage for the Pappas Claim under the Everest Policy, Ohio Security is the primary insurer and is not entitled to any contribution. Harbor Freight's argument is that "because the indemnity agreement between the insureds supersedes 'Other Insurance' provisions; a ruling to the contrary would render the indemnity requirements a nullity." (Doc. 54 at 25). Harbor Freight argues that both the Everest Policy and the Ohio Security Policy would be primary for the Pappas Claim, and Candu would have to indemnify Harbor Freight for the Pappas Claim because Candu was the only insured that was negligent. (*Id.* at 26–27). Harbor Freight cites a Florida Supreme Court decision for this proposition. (*Id.* at 25–28 (*citing Allstate Insurance V. Fowler*, 480 So. 2d 1287 (Fla. 1985))).

**(1) Ranking of Coverage By Multiple Insurers**

"In Florida, 'where more than one insurer's policy provides coverage for a loss,' . . . 'it is appropriate to review the insurance contracts to see if the documents address the "ranking" or contribution of other insurers.' That sort of 'ranking' is usually accomplished through an 'other insurance' clause." *Gemini Ins. Co. v. Zurich Am. Ins. Co.*, 119 F.4th 1296, 1299 (11th Cir. 2024) (citation omitted). "In apportioning contractual responsibilities among multiple insurers, this court has recognized that 'Florida law is quite clear that the parties' intent is to be measured solely by the language of the policies

unless the language is ambiguous.'" *Nat'l Union Fire Ins. Co. of Pittsburgh, Penn. v. Travelers Ins. Co.*, 214 F.3d 1269, 1272 (11th Cir. 2000) (quoting *Towne Realty, Inc. v. Safeco Ins. Co. of Am.,* 854 F.2d 1264, 1267 (11th Cir. 1988) (emphasis omitted)). The language in both insurance policies is not ambiguous because it is not "reasonably susceptible to more than one interpretation." *Warwick Corp. v. Turetsky*, 227 So. 3d 621, 624 (Fla. Dist. Ct. App. 2017).

Using identical language, both insurance policies address how to determine which of several applicable policies provides primary coverage. Both policies provide that "[i]f other valid and collectible insurance is available to the injured for a loss we cover . . . our obligations are limited as follows." (Doc. 47-1 at 180; Doc. 47-2 at 39). This condition is satisfied for both insurance policies because other valid and collectible insurance is available for the Pappas Claim.

Both Policies provide that its "insurance is primary except when Paragraph b. below applies." (*Id.*). Both Policies implicitly recognize that each Policy could provide primary coverage. Both provide that if the Policy is primary, the insurer's "obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below." (*Id.*).

Both Ohio Security and Harbor Freight contend that their respective policies fall within one of the express exceptions in Paragraph b. and therefore provide only excess coverage. The exceptions in Paragraph b. are identical in both Policies. Paragraph b. provides that each Policy's insurance is "excess over" five categories of other insurance. (Doc. 47-1 at 180; Doc. 47-2 at 39–40). Only the last category of insurance, insurance "for which [named insured has] been added as an additional insured," provides a possible exception for either Policy in this case.

Ohio Security argues that the Ohio Security Policy is the excess policy because Candu "was added as an additional insured under the Everest Policy. Paragraph b. does not apply to the Everest Policy, which means its coverage remains primary." (Doc. 47 at 12–13). Ohio Security relies on two non-binding federal district court decisions to conclude that the Everest Policy is primary, and the Ohio Security Policy is excess. (*Id.*)

The full text of the relevant portion of the Everest Policy provides that insurance provided by the Everest Policy "is excess over . . . [a]ny other primary insurance available to you [Harbor Freight] covering liability for damages arising out of the premises or operation . . . for which you have been added as an additional insured." (Doc. 47-1 at 180). As the Court has determined, Candu was an additional insured under the Everest Policy. The parties agree that Harbor Freight was not an additional insured in the Ohio Security Policy.

Under this endorsement, Candu was an insured under the Everest Policy "but only with respect to liability for 'bodily injury', 'property damage', or 'personal and advertising injury' caused, in whole or in part, by: 1.Your acts or omissions; or 2. The acts or omissions of those acting on your behalf, in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above." (*Id.* at 250). The facts here establish that Candu's negligence was the sole cause of the Pappas Claim. Therefore, under the Policies' text, coverage provided by the Everest Policy remains primary.

**(2) Florida Law Disregards Primary Status of Non-Liable Insured**

Despite these contractual provisions, Harbor Freight argues that Florida law precludes imposing primary coverage on it because it is not a liable party. (Doc. 54 at 11–12, 27–28). Not so.

Florida law provides that "other insurance" clauses in an insurance policy will only be disregarded if either of two conditions exist: (1) the insurance policy issued to the vicariously liable party must not cover the active tortfeasor as an additional insured; and (2) the vicariously liable party must not be a joint tortfeasor. *Fowler*, 480 So. 2d at 1290. The first condition required for avoidance of an "other insurance" clause is not present here because the Everest Policy issued to Harbor Freight covers the active tortfeasor, Candu.

According to *Fowler* and its progeny, the insurer of the vicariously liable party must be entitled to indemnity before it is automatically entitled to follow the insurer of the actively negligent party. But the insurer of a vicariously liable party is only entitled to indemnity if it does not insure a joint tortfeasor or the actively negligent party as an additional insured. *Id.* at 1290. In this case, Candu is the actively negligent party and is covered as an additional insured arising from use of the premises.

### C. Ohio Security's Entitlement to Reimbursement as Excess Carrier under SIR Exclusion

Ohio Security argues that because it is the excess carrier and Everest is the primary carrier, the limits of the Everest Policy must be paid first to indemnify Candu against the Pappas Claim before any payment from Ohio Security. Ohio Security has settled with Everest, however, so it argues that Harbor Freight is itself liable under the SIR endorsement to the Everest Policy. Relying solely on a federal district court opinion, Ohio Security asserts that "an excess insurer [here Ohio Security] that pays a claim [here the Pappas Claim] against an insured is entitled to reimbursement from the primary insurer [here Everest] by equitable subrogation." (Doc. 47 at 13). Ohio Security concludes that Harbor Freight is conclusively bound by the terms of the settlement of Candu's liability. (*Id.* at 14).

"[I]n Florida, a primary carrier owes a duty of good faith to an excess carrier—the same duty it owes its insured. [] This duty stems from equitable

subrogation principles, in that, in the event of an award over the primary insurer's policy limits, the excess insurer incurs the same duty to pay that the insured would have in the absence of an excess insurer, and correspondingly the excess insurer has the same right to sue the primary insurer for bad faith as the insured." *Progressive Am. Ins. Co. v. Nationwide Ins. Co.*, 949 So. 2d 293, 294 (Fla. Dist. Ct. App. 2007) (citations omitted). "Equitable subrogation is an appropriate form of relief in a dispute between a primary and excess insurer arising from the payment of a claim by the excess insurer." *Phoenix Ins. Co. v. Fla. Farm Bureau Mut. Ins. Co.*, 558 So. 2d 1048, 1050 (Fla. Dist. Ct. App. 1990).

In this case, the Self-Insured Retention (SIR) Endorsement modifies commercial general liability coverage providing for allocated loss adjustment expenses, such as court costs and attorney fees, to be paid by Harbor Freight "in connection with claims that are covered under the policy[.]" It requires that Harbor Freight "will pay all damages, settlements and 'allocated loss adjustment expense' arising out of each 'occurrence'" "until you [Harbor Freight] have paid a total of Self-Insured Retention amounts and 'allocated loss adjustment expense' that exceeds" the per occurrence amount of $1,000,000 per occurrence. (Doc. 47-1 at 186–87). The obligation to pay is "in excess of the applicable Self Insured Retention shown in the Schedule and only after the Self Insured Retention is exhausted by your [Harbor Freight]

payment of damages, settlements[.]" (*Id.* at 189). Harbor Freight is required to "accept any reasonable offer to settle any claim or "suit" for an amount within the Self Insured Retention."

"A SIR 'is generally a specific amount of loss that is not covered by the policy but instead must be borne by the insured.'" *Ins. Co. of the State of Pennsylvania v. Acceptance Ins. Co.*, No. SACV01-0225DOCANX, 2002 WL 32515066, at *3 (C.D. Cal. Apr. 29, 2002) (citation omitted). "[T]he SIR endorsement 'effectively transforms the policy from a primary policy into an excess policy' covering only amounts in excess of the self-insured retention." *Id.* at *4 (citation omitted). In *Acceptance Insurance*, "[t]he court noted that this provision in the SIR endorsement would be meaningless if not interpreted as requiring the insured to satisfy the SIR with its own funds. *Id.* Otherwise, the provision 'would be reduced to simply reiterating the more general terms' of the policy." *Intervest Const. of Jax, Inc. v. Gen. Fid. Ins. Co.*, 133 So. 3d 494, 502 (Fla. 2014) (citing *Acceptance Insurance*, 2002 WL 32515066, at *7). Clearly, Harbor Freight is obligated to first satisfy the settlement with its own funds.

**D. Attorney Fees and Costs**

Harbor Freight argues it is entitled to recover its costs and attorney fees under as provision of the Lease which addresses when "Landlord [Candu] or Tenant [Harbor Freight] files a suit against the other which is in any way

connected to this Lease," the prevailing party who "obtains substantially the result sought" is entitled to reasonable attorney's fees and costs. (Doc. 54-5 at 41). As the Court finds that Harbor Freight is not the prevailing party here, the request is moot.

Accordingly, it is now

**ORDERED:**

1. Plaintiff Ohio Security Insurance Company's Motion for Summary Judgment (Doc. 47) is **GRANTED** as the Court declares that Candu is an additional insured under Harbor Freight's liability insurance policy (the Everest Policy); the Pappas claim arose of Harbor Freight's use of the premises; coverage is not excluded under Florida State law; the Everest Policy is primary and Ohio Security is excess coverage; Harbor Freight must pay Ohio Security the amount remaining under the SIR of the Everest Policy, $978,402.25, as reimbursement for the Pappas claim.
2. Defendant Harbor Freight Tools USA, Inc.'s (Corrected) Combined Brief in Support of its Cross-Motion for Summary Judgment (Doc. 54) is **DENIED.**
3. Third-Party Defendant Candu's Motion to Dismiss Amended Third-Party Complaint (Doc. 68) is **DENIED without prejudice** to re-

filing**.** The parties shall notify the Court within **ten days** of the date of this Order if the Third-Party Complaint is now moot.

4. The Clerk shall withhold entry of judgment until the conclusion of the case.

**DONE and ORDERED** in Fort Myers, Florida on August 5, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: Counsel of record